CLARA R. SMIT, ESQ.
ATTORNEY AT LAW
100 HORIZON CENTER BLVD
HAMILTON, NJ 08691
(732) 843-6600
ATTORNEY FOR THE PLAINTIFF

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROLANO MATOS,** | : |
| | : |
| **Plaintiff,** | : |
| V. | : CIVIL ACTION NO.: |
| | : |
| **ST. MICHAEL'S MEDICAL CENTER** | : |
| | : COMPLAINT AND JURY DEMAND |
| | : |
| | : |
| **Defendant.** | : |
| | : |

The Plaintiff, Rolando Matos, residing at 23 Wall Street, City of Newark, County of Essex, State of New Jersey, file this Complaint, and would respectfully show the Court as follows:

**NATURE OF CASE**

1. On July 26, 1990, Congress enacted the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., establishing the most important civil rights for persons with disabilities in our country's history. This action is brought by the plaintiff, Rolando Matos, against defendant's hospital, in their failure to provide reasonable

accommodations for the Plaintiff's disability and for discrimination based on disability during plaintiff Rolando Matos's care while in defendant's hospital. The Plaintiff experienced humiliation and discrimination in violation of his civil rights through Defendant's policies and practices of discrimination on the basis of disability.

2. This action claims that the defendant violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., hereafter NJLAD, the ADA, and Section 504 of the Rehabilitation Act, as well as other state and common law causes of action. In this action, Plaintiff suffered damages and now seeks declaratory and injunctive relief, and compensatory and punitive damages.

## JURISDICTION AND VENUE

3. Jurisdiction of this court is invoked pursuant to N.J.S.A. 10:-5-1 et. seq, the Americans with Disabilities Act, Title III, 28 USCS Section 12181 et seq and the Rehabilitation Act, 29 USCS Section 794, Section 504. This suit is authorized and instituted pursuant to the exercise of the police power of the State for the protection of the public safety, health, and morals and to promote the general welfare and fulfillment of the provision to the Constitution of the State of New Jersey and the United States of America guaranteeing civil rights.

## PARTIES

4. Rolando Matos is a resident of the City of Newark, County of Essex and State of New Jersey. Plaintiff Rolando Matos is profoundly deaf and communicates through American Sign Language. He requires qualified American Sign Language interpreters, reasonable accommodations/modifications and other auxiliary aids and services to communicate effectively with the defendant and to benefit from defendant's services. Plaintiff is a qualified person with a disability pursuant to Section 504, the ADA and NJLAD.

5. Defendant, St. Michaels Medical Center, is located at 111 Central Aveneue, City of Newark, County of Essex and State of New Jersey. It is a public

entity under the ADA and is a recipient of federal financial assistance. Thus, it is subject to the requirements of both the ADA and Section 504.

## FACTS

6. One of the most important parts of the Americans with Disabilities Act is Title III, known as the "Public Accommodations and Services Operated by Private Entities". 42 U.S.C. Section 12181 et seq.

7. The New Jersey Law Against Discrimination specifically prohibits discrimination based upon disability under 10:5-12.

8. Section 504 of the Rehabilitation Act of 1973, provides that "No otherwise qualified individual with a disability" shall be "excluded, denied or discriminated against" by any facility receiving "federal financial assistance".

9. Defendant provides public accommodations within the meaning provided in each of the above laws.

10. As relevant to the present action, discrimination includes a failure to provide appropriate and reasonable auxiliary aids to plaintiffs who have a hearing loss to ensure effective communication. 28 C.F.R. Section 36.303(c).

11. Among these aids include a failure to provide interpreters to plaintiff Rolando Matos during his medical care. These aids were requested and denied by the defendants during Matos's multiple hospitalizations from February 2018 until August 2018 and on all occasions prior and thereafter.

12. Plaintiff Rolando Matos was a patient at St. Michael's Medical Center on February 18, 2018 until February 19, 2018. Plaintiff was brought to defendant's hospital after being found on the sidewalk with a dislocated shoulder. Upon entering the emergency room, plaintiff immediately asked for an interpreter to be able to communicate. A video remote interpreter (hereinafter referred to as the "VRI"), was brought to plaintiff, however nurses were unable to hook it up and get

it working. Plaintiff, in severe pain, was unable to communicate this in anyway without the VRI working, or without a live interpreter.

13. After an initial exam, where a history was taken from Plaintiff via pen and paper, Plaintiff was moved to a room where he was placed by himself. He was unaware why he was in the room and was left without any means of communication including a nurses' call bell. Finally, after screaming in pain in the room all alone, a nurse came in and administered an unknown medication which was not explained to plaintiff as he had no means of communication with medical staff. Shortly after receiving the medication a doctor came into the room and painfully popped plaintiff's shoulder back into place.

14. Plaintiff was admitted to the hospital for overnight observation. During the night, plaintiff's shoulder again dislocated and he awoke in extreme pain and began screaming again. Plaintiff was unaware of what was happening to him and completely unaware that this dislocation could occur again as he was never provided with an interpreter during the day prior to explain his condition and possible reoccurrence. A nurse and doctor came in and painfully reset the shoulder again. Plaintiff was discharged from the hospital after spending an agonizing two days in pain, without the ability to communicate effectively with his medical providers.

15. Plaintiff returned to St. Michael's Medical Center on April 15, 2018 with eye redness and chest pain. Upon entering the emergency room, Plaintiff immediately asked for an interpreter to be present during his visit. However, after locating the VRI machine, hospital staff determined it was broken and made no other attempts to fix the machine, or to contact a live interpreter. Instead, staff attempted to communicate with Plaintiff through written notes. Plaintiff, however, was unable to focus on writing back and forth due to his medical concerns and because writing back and forth for him in medical situations is not effective, as his primarily language is American Sign Language, not English. He thus indicated to

staff that he could not effectively communicate in writing. Medical staff then proceeded to treat Plaintiff anyway, without making any effort to obtain a qualified interpreter to effectively communicate with him. Plaintiff was released from the hospital on the same day without any answers concerning his medical treatment due to this lack of communication.

16. On April 20, 2018 Plaintiff returned to the emergency room of defendant's hospital. Plaintiff once again asked for an interpreter, and was once again not provided with an interpreter. Plaintiff was seen for a bad cough and joint pain. Plaintiff was given an x-ray to try to find the cause of the pain, and was released a few hours later with multiple prescriptions for his pain and his cough, again without truly understanding his medical treatment.

17. On August 22, 2018 Plaintiff went to the emergency room at St. Michael's Medical Center with leg and arm pain and a fever. Again, Plaintiff immediately asked for an interpreter upon entry into the emergency room. Plaintiff was informed that the VRI machine was broken, so he would have to rely on using pen and paper to convey how he was feeling. Plaintiff was given an x-ray and bloodwork was taken, however Plaintiff was unable to get a clear picture of the care or tests he was being given or what his diagnoses was. He was discharged hours later once again without ever having the ability to effectively communicate during his medical treatment.

18. Throughout plaintiff Rolando Matos's numerous stays, he was seen by various nurses and staff without the utilization of an interpreter despite plaintiff's repeated requests resulting in ineffective communication. Without an interpreter being provided to him, Plaintiff was unable to communicate effectively during critical aspects of his treatment. This led to Plaintiff not having a complete understanding of what took place during his medical treatment as well as being unable to participate in and ask questions about his medical treatment, diagnosis, and prognosis on the four separate occasions outlined above. This also led

Plaintiff to feeling frustrated, scared and upset about the lack of communication during his hospitalization. All requests by Plaintiff for an on-site sign language interpreter when the VRI failed to work, went ignored by defendants. This lack of communication left Plaintiff feeling frustrated, scared and upset as he struggled to understand the medical treatment he received at defendant's hospital during his hospitalization.

19. Plaintiff was ignored, humiliated and treated like a non-person by defendants. Defendant's actions resulted in the Plaintiff being irretrievably denied the complete understanding of the care received while at the Hospital's Facilities. Instead Plaintiff experienced shame, anxiety, frustration, emotional distress, fear and discrimination. Further, Rolando Matos's care was made more difficult and painful by his inability to communicate with the nursing staff and doctors in a manner in which he could understand.

20. During the Plaintiff's admission to defendant's hospital he was requested to sign consent forms and other forms involving procedures without an interpreter present. Plaintiff did not fully understand what treatment was to be performed on him and was often unaware of his diagnosis, prognosis and was unable to fully understand what treatment was to be performed on him.

21. Despite having a policy and a consent order entered into with St. Michael's Medical Center in the previous case of <u>Keegan v. St. Michael's Medical Center</u>, filed by the Honorable John W. Bissel on December 13, 1999 under Civil Action No. 98-4581 (JBW) in the United States District Court of New Jersey, this hospital repeatedly denied and continues to deny effective accommodations to deaf plaintiffs. (See a true copy of the Consent Order attached as Exhibit A in which defendant's agreed to provide qualified interpreters whenever necessary to ensure effective communication). Thus, St. Michael's Medical Center had prior notice of these violations and yet continues to fail to have a procedure and policy in place that will ensure that these violations do not occur.

22. Each and all of the above acts, both of omission and commission, were intentional acts of discrimination and each and all were a proximate cause of the damages suffered by Plaintiff. Plaintiff will require the services of defendant hospital's facilities in the future as it is the closest hospital to plaintiff's home, and based upon defendant's ongoing pattern of discrimination will once again be denied reasonable accommodation for their disability.

23. Defendant's willful, knowing and repeated acts of intentional discrimination against plaintiff evidences a pattern and practice of discrimination that is in violation of N.J.S.A. 10:5-1, et seq., the ADA and the Rehabilitation Act and caused plaintiff to suffer and continue to suffer mental pain and anguish.

## CLAIMS

24. Plaintiff realleges and incorporate by reference the allegations of fact contained in the previous paragraphs.

## FIRST COUNT
## DEFENDANTS VIOLATED TITLE III OF THE AMERICANS WITH DISABILITIES ACT

25. Plaintiff's hearing loss substantially limits his major life activities, including his ability to effectively communicate. Therefore, Plaintiff is an individual with a disability under Title III of the ADA. Plaintiff meets the essential eligibility requirements for Defendants' programs, services, and activities at all times material hereto. Thus, Plaintiff is a qualified individual with a disability and is entitled to the protections of the ADA under 29 USCS Section 794, et seq.

26. Defendants violated Title III of the ADA in numerous ways, including discriminatory actions which occurred when they:

(a) Failed to maintain policies and procedures to ensure compliance with Title III of the ADA, specifically policies that provide equal access and effective communication to individuals with disabilities;

(b) Failed to ensure that communications with Plaintiff were as effective as communications with non-disabled patients;

(c) Failed to provide auxiliary aids and services, including qualified interpreters, and to modify policies and procedures to prevent discrimination against Plaintiff;

(d) Failed to establish effective self-evaluations and/or provide notice of Plaintiff's rights as an individual with a disability under the ADA;

(e) Failed to train staff on how to utilize the video remote interpreting system; and

(f) Excluded Plaintiff from services of the public entity and denied Plaintiff the benefit of these services due to his disability.

27. Plaintiff suffered severe emotional distress and damages in the past, and continue to suffer emotional distress and damages due to Defendant's violations of Title III of the ADA.

## SECOND COUNT
## DEFENDANTS VIOLATED SECTION 504 OF THE REHABILITATION ACT OF 1973

28. Plaintiff is deaf and his disability substantially limits his major life activities, including his ability to effectively communicate with others who do not know sign language. Therefore, Plaintiff is considered to be an individual with disabilities under Section 504, as amended, See 29 U.S.C. §706(8). Plaintiff is otherwise qualified under Section 504 because he meets the essential eligibility requirements for Defendant's services at all times material hereto. Defendant is also a recipient of federal financial assistance.

29. Defendant's policies, practices and procedures, particularly the actions and omissions described above, violated the Plaintiff's rights under Section 504 by discriminating on the basis of disability.

30. Additionally, Defendants also denied Plaintiff services which it made available to non-disabled patients.

31. Defendant's violated Plaintiff's rights through repeated refusals to reasonably accommodate the Plaintiff with appropriate auxiliary aids and services or to modify policies and procedures to prevent discrimination.

32. Plaintiff suffered severe emotional distress and damages in the past, and continues to suffer distress and damages due to defendant's violations of Section 504.

### THIRD COUNT
### DEFENDANTS VIOLATED THE NEW JERSEY LAW AGAINST DISCRIMINATION

33. Defendant's conduct is in violation of the N.J.S.A. 10:5-1, et seq., N.J.S.A. 34:1-69.10 et seq.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against the Defendant, jointly and severally for the following:

34. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, Title III of the Americans with Disabilities Act, and the New Jersey Law Against Discrimination.

35. Permanently enjoin the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services or which deny Plaintiff communication with Defendant . Enter a permanent injunction ordering the Defendant:

    A. To cease discrimination against Plaintiff and other deaf or hard of hearing patients;

  B. To promulgate and comply with policies and procedures to ensure that the Defendant and its staff do not discriminate against individuals who are deaf and hard of hearing;

  C. To promulgate and comply with procedures to ensure that the Defendant will provide and pay for interpreter services when needed by individuals who are deaf or hard of hearing in all services offered by Defendant;

  D. To promulgate and comply with procedures to ensure that the Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, Videophones, and other communication services to ensure effective communication with and for deaf or hard of hearing persons.

36. Award compensatory and punitive damages;

37. Award reasonable costs and attorneys' fees; and

38. Award any and all other relief that may be necessary and appropriate.

## JURY DEMAND

39. Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

       Respectfully submitted,

        /s/ Clara R. Smit
       CLARA R. SMIT, ESQ.
       Attorney for Plaintiff

Dated: December 5, 2019

## **CERTIFICATION**

Pursuant to Rule 4:5-1, I, Clara R. Smit, certify that I am a member of the firm of Clara R. Smit, attorney for the Plaintiff stated herein. To my information and belief, the matter in controversy is not the subject of any other action pending in any other Court, or of a pending arbitration proceeding and no other action or arbitration proceeding is being contemplated. At this time, the Plaintiffs know of no other party who should be joined in this action.

<u>/s/ Clara R. Smit</u>
Clara R. Smit, Esq.
Attorney for Plaintiff

Dated: December 5, 2019